NOTE—Reported at 394 N.E.2d 222.

EARLE G. DAVIS, MIKE ELLSWORTH, LOUIS MCWHORTER, INDIVIDUALLY AND AS REPRESENTATIVES OF PLAINTIFFS BELOW, AND ARTHUR H. NORTHRUP *v.* ELWOOD MCELHINEY, FRANCIS SALLIER, AND DEAN DEWITT, AND INDIANA NATIONAL CORPORATION AND TFAC, INC.

[No. 1-379A83. Filed September 18, 1979. Rehearing denied October 23, 1979.]

*Arthur H. Northrup*, of Indianapolis, *William Wolf, Wolf, Robak and Murphy*, of Greenfield, for appellant.

*Richard D. Wagner, Krieg, DeVault, Alexander & Capehart*, of Indianapolis, for appellees. *Richard L. Johnson, Johnson & Gross*, of Indianapolis, for Indiana National Corporation and TFAC, Inc.

## STATEMENT OF THE CASE

LOWDERMILK, P.J.—Earle G. Davis, Mike Ellsworth, Louis McWhorter, and Arthur H. Northrup bring this appeal challenging the refusal of the Hancock Circuit Court to order payment to them for certain services allegedly performed on behalf of the class of plaintiffs in litigation against Indiana National Corporation and TFAC, Inc.[1]

## FACTS

Lot owners at Stardust Hills development in Putnam County filed this class action against Indiana National Corporation and TFAC, Inc., which had succeeded to the assets and certain liabilities of the original developer of Stardust Hills. Earle G. Davis, Mike Ellsworth, and Louis McWhorter served as class representatives. Arthur H. Northrup was attorney for the class. This litigation culminated in a written settle-

---

1. Indiana National Corporation and TFAC, Inc. have filed a brief and simply state that they take no position with respect to the issues presented in this appeal.

ment agreement which was approved by the defendants, the class members, and the trial court.

Included in the settlement agreement was the following provision:[2]

"14. Attorneys' Fees and Expenses. At closing TFAC shall advance to SHOC for payment to Class Plaintiffs' attorneys in the litigation, the sum of Thirty-Five Thousand Dollars ($35,000). In addition, TFAC shall at closing deposit with the Court in the Hancock Litigation the sum of Seventy-Eight Thousand Dollars ($78,000) for distribution by such Court as it deems appropriate for payment for services and expenses incurred by Class Plaintiffs in connection with the Litigation, including, but not limited to, court costs, deposition expenses, bond premiums, appraisal fees, professional witness fees, postage and correspondence expenses, and fees for services and expenses incurred by Class Plaintiffs, including expenses incurred by Class Plaintiffs in connection with the notifying of class members of the settlement herein set forth. Any sums not distributed by the Court for the purposes described above shall be remitted to TFAC and added to the funds made available to SHOC pursuant to paragraph 3(IV) of the Construction Loan Agreement. Such sums advanced hereto shall be evidenced by the Purchase Note to be executed by SHOC in favor of TFAC."

After the settlement agreement had been approved, claims were filed with the Hancock Circuit Court against the $78,000 deposit, as follows:

*Ralph Wm. Hook, Jr.*

| | | |
|---|---|---|
| accounting fees | | $ 2,338.75 |

*Arthur H. Northrup*

| | | |
|---|---|---|
| attorney fees | $ 6,546.00 | |
| cash advancements | 1,036.70 | 7,582.70 |

*Hall-Hottel Co., Inc.*

| | | |
|---|---|---|
| bond premium | | 200.00 |

2. SHOC is an abbreviation for a corporation which was formed to carry out certain duties and to receive title to certain property as provided by the terms of the settlement agreement. The shares of stock in SHOC are held by property owners in Stardust Hills.

*Property Owners*

| | | |
|---|---:|---:|
| reimbursement of contributions for litigation expenses | | 2,850.00 |

*Earle Davis*

| | | |
|---|---:|---:|
| services | 17,462.50 | |
| mileage expense | 682.95 | |
| telephone & misc. expense | 359.30 | 18,504.75 |

*Louis McWhorter*

| | | |
|---|---:|---:|
| services | 8,100.00 | |
| mileage expense | 370.65 | |
| telephone & misc. expense | 124.87 | 8,595.52 |

*Mike Ellsworth*

| | | |
|---|---:|---:|
| services | 33,594.86 | |
| mileage expense | 3,549.15 | |
| telephone & misc. expense | 784.27 | 37,928.28 |
| | | $78,000.00 |

The trial court ordered that notice should be sent to all members of the class. Thirty-seven lot owners responded by filing with the court their letter in which they challenged the claims of Davis, McWhorter, Ellsworth, and Northrup. After conducting a hearing, the trial court ordered payments as follows:

*Arthur H. Northrup*

cash advancements — $1,906.60

*Ralph Wm. Hook*

accounting fees — 2,338.75

*Hall-Hottel Co., Inc.*

bond premium — 200.00

*Property Owners*

reimbursement — 2,850.00

*Earle Davis*

| | |
|---|---|
| mileage expense | 682.95 |

*Louis McWhorter*

| | |
|---|---|
| mileage expense | 370.65 |

*Mike Ellsworth*

| | |
|---|---|
| mileage expense | 3,549.15 |

The trial court later modified its order by providing for reimbursement to Davis, McWhorter, and Ellsworth for telephone and miscellaneous expenses in the amount claimed by each.

## ISSUES

The claimants have asked this court to consider the following issues:

"1. Did the [trial] court err, abuse its discretion and violate Trial Rule 23(D), last sentence, by its total failure to determine and 'allow reasonable attorney's fees and reasonable expenses incurred from a fund recovered for the benefit of a class'?

2. Did the [trial] court abuse its discretion, make an inadequate determination of the amount of the recovery and render a decision contrary to the evidence and contrary to law, because the [trial] court refused as a matter of law to award any payment for personal services to laymen who were parties to the class action or even to reimburse them for expert witness fees which they had paid, when paragraph 14 of the settlement agreement approved by the parties and the [trial] court expressly provided for the payment of service, professional witness fees and other reasonable expenses up to a total limit of $78,000.00?"

## DISCUSSION AND DECISION

In considering these issues we must first look to the terms of the settlement agreement. It was agreed that

". . . At closing TFAC shall advance to SHOC for payment to Class Plaintiffs' attorneys in the litigation, the sum of Thirty-Five Thousand Dollars ($35,000). . . ."

Additionally, the parties agreed that

". . . TFAC shall at closing deposit with the Court in the Hancock Litigation the sum of Seventy-Eight Thousand Dollars ($78,000) *for distribution by such Court as it deems appropriate* for payment for services and expenses incurred by Class Plaintiffs in connection with the Litigation, including, but not limited to, court costs, deposition expenses, bond premiums, appraisal fees, professional witness fees, postage and correspondence expenses, and fees for services and expenses incurred by Class Plaintiffs, including expenses incurred by Class Plaintiffs in connection with the notifying of class members of the settlement herein set forth. . . ." (Our emphasis)

The distribution of the $78,000 was left for determination by the trial court in exercise of its discretionary powers. Judge Bowen defined "abuse of discretion" in *Parks v. Koser*, (1955) 125 Ind.App. 585, 595, 126 N.E.2d 785, as ". . . an erroneous conclusion and judgment which is clearly against the logic and effect of all the facts and circumstances before the court."

After claims were submitted for distribution of the $78,000, the trial court properly imposed two conditions upon payment of the claims: (1) Notice had to be given to the members of the class, and (2) claimants had to provide evidence in support of their claims.

Finally, we deem it proper to make one additional general comment. The claimants have implied that the $78,000 was a fund of money gained from the defendants as a result of the litigation and set aside specifically for payment of fees and expenses of litigation. According to the settlement agreement, the $78,000 was a portion of the money which TFAC agreed to *loan* to SHOC. The reference to the $78,000 is more in the nature of an agreed limitation as to how much of the loaned money could be used for the purposes stated therein. If less than $78,000 was used for the stated purposes, that balance became available for borrowing by SHOC from TFAC for costs of constructing the proposed dam. Regardless of which use was made of the money, the borrowed funds had to be repaid by SHOC to TFAC; SHOC could pay no dividends until TFAC had been paid in full for all loans made to SHOC.

*Issue One*

Claimants provide eight arguments in support of their contention

that the trial court erred in failing to award Attorney Northrup the full amount which he claimed.

1. Claimants assert that the trial court violated Ind. Rules of Procedure, Trial Rule 23(D) by failing to order payment of attorney fees.[3]

The trial court's omission of Northrup's claim from the list of claims to be paid unquestionably amounted to a finding that additional attorney fees were not due. The settlement agreement provided for payment of $35,000 in attorney fees. This agreement was submitted to the trial court and approved by it. Certainly the result was no different than it would have been if the trial court had entered its separate order for payment of $35,000 in attorney fees. When claimants state that "no order whatever for attorney fees was ever made in this class action," they place form above substances and ignore the obvious result of the approval of the settlement agreement.

2. Claimants argue that the trial court violated paragraph fourteen of the settlement agreement by rejecting Northrup's claim for an additional fee.

Careful reading of paragraph fourteen reveals that the $78,000 was to be distributed as the trial court deemed appropriate. The trial court did not overlook the reference to "fees for services" for it did order payment of the accountant's claim. The trial court simply declined to order payment of Northrup's claim for $6,546 because the trial court did not deem it "appropriate" to pay the additional fee.

3. The third argument will be considered along with the sixth.

4. Claimants insist that paragraph fourteen provides for two payments for attorney fees; the $35,000 was to be paid at closing and the balance was to be paid from the $78,000. Claimants argue that "the express language of paragraph fourteen precludes the notion that the

---

3. T.R. 23(D) provides, in part:

". . . The court shall allow reasonable attorney's fees and reasonable expenses incurred from a fund recovered for the benefit of a class under this section and the court may apportion such recovery among different attorneys."

$35,000 advancement to plaintiffs was payment in full of attorney fees, including fees of Greenfield counsel and special securities counsel."

We agree that paragraph fourteen could be construed to permit payment of additional attorney fees. We do not agree that the language *precludes* the trial court's determination that additional attorney fees were inappropriate.

5. Claimants assert that "counsel for the defendants, in explaining the settlement agreement, told the [trial] court in so many words that the parties intended that the $78,000 include attorney fees in addition to the $35,000 advanced at closing."

Defendants' counsel was simply using the language set forth in the settlement agreement. This statement certainly does not dictate claimants' interpretation of it. Furthermore, the parties undeniably agreed that the $78,000 should be distributed as the trial court deemed appropriate. The issue is: What was appropriate?

6, 7, 8, and 3. Each of these arguments amounts to an assertion that the trial court abused its discretion in rejecting Northrup's claim for $6,546 as additional attorney fees.

Claimants have cited *Rubenstein v. Republic National Life Insurance Co.*, (N.D. Texas 1976) 74 F.R.D. 337, for a list of factors to be considered in awarding attorney fees, including (1) the novelty and difficulty of the issues litigated; (2) the results obtained; (3) whether the fee is fixed or contingent; (4) the experience, reputation, and ability of the attorney; (5) the amount of time expended; and (6) customary fees.

The class plaintiffs sought injunctive relief and compensatory ($15,000,000) and punitive ($30,000,000) damages due to TFAC's alleged breaches of obligations to construct and maintain various improvements and facilities in the Stardust Hills development. The class obtained an injunction. Rather than pursue the litigation, the class entered into an agreed settlement with the defendants. According to claimants, by the terms of the agreement,

"over 1,250 unsold lots worth over $4,500 each or $5,625,000 minimum was deeded to the lot owners, with an $837,000 interest-

free purchase money mortgage taken back and $867,000 in construction and operating funds obtained interest free."

Not everyone viewed the settlement agreement quite so favorably, however. Those persons who objected to the payments of certain claims wrote as follows:

"... the property owners of record throughout this entire litigation, who were made part of the litigation as part of the class representation, have received nothing more than promises, some shares of stock, ... and a note for 60% of the value of their original land investment payable only after [SHOC] successfully pays off all of its agreed to obligations and liabilities which may very well never happen."

In the published notice of the proposed settlement agreement, we note the following warning:

"None of the Defendants has made any representations relating to the Settlement Agreement concerning the marketability of the Development. Some of the Defendants have made or have caused to be made studies which create substantial doubts as to the marketability of the Development. SHOC's ability to perform under the various agreements above described is dependent upon SHOC's ability to sell lots in the Development to the general public."

In their brief claimants state that "payment of counsel fees here was unlikely except through a satisfactory result. In short, the bulk of the fee was contingent." This statement creates questions rather than answering them. For instance, what does "bulk" mean? The argument in the brief suggests that Northrup had an agreement with his clients for a stated fee but did not anticipate being able to collect it unless the litigation proved successful. We must assume that Northrup either did or did not have an agreement for a contingent fee. Claimants fail to cite any evidence in the record concerning the fee agreement.

Claimants provided evidence of Northrup's expertise, and Northrup testified that $50 per hour was a reasonable and recognized fee for such services as he had performed.

Finally, Northrup submitted a statement showing that he had expended 101.6 hours after October 31, 1977. Claimants cite no evidence of the amount of time expended by Northrup prior to October 31, 1977.

Having carefully examined the evidence to which claimants have directed our attention, relative to those six factors set forth in *Rubenstein, supra,* we must hold that the trial court did not abuse its discretion when it rejected Northrup's claim for additional attorney fees. The trial court's limitation of $35,000 as attorney fees, as previously approved, is not against the logic and effect of those facts and circumstances which were before the trial court.

*Issue Two*

Claimants argue that the trial court abused its discretion when it refused to approve payment of the claims of Davis, McWhorter, and Ellsworth for services allegedly performed by them. Additionally, claimants contend that the trial court erred when it failed to order reimbursement to Ellsworth for $1,200 which he allegedly paid in order to obtain the services of an expert witness.

Davis, McWhorter, and Ellsworth all served as class representatives. They testified in very general terms concerning their services in negotiating the terms of the settlement agreement, in negotiating with the town of Cloverdale,[4] in preparing budgets for SHOC, and in dealing with contractors and subcontractors. The only evidence introduced in support of the number of hours for which they claimed payment at the rate of $25 per hour was a summary sheet which listed the total number of hours allegedly invested by each of them, month by month.

Initially we note that the claims were not supported by adequate evidence concerning the exact nature of the services performed nor the number of hours invested in performing particular tasks. Neither the trial court nor this court has any way whatsoever for determining whether the demands are reasonable.

Second, the evidence reveals that Davis, McWhorter, and Ellsworth had already enjoyed personal gain as a result of their negotiations. Ellsworth testified that the engineering company which he owned had been awarded a $90,000 contract for constructing certain improvements

---

4. Ellsworth acknowledged that this was the duty of TFAC and not the duty of the class or of SHOC.

at Stardust Hills; his company entered into the contract with defendant TFAC while Ellsworth was serving as a class representative. Additionally, Ellsworth would be serving as Executive Officer of SHOC, for which he would be paid an undisclosed amount of money. Davis and McWhorter, as well as Ellsworth, were serving as officers and directors of SHOC, and the settlement agreement provided specifically that those positions also would be paid positions.

Third, a plaintiff is not usually paid for the time which he invests in promoting a favorable settlement of his lawsuit. We do not hold that it would never be proper for a class representative to receive payment for services which he renders, but we do hold that the facts and circumstances of the present case warrant denial of the claims of McWhorter, Davis, and Ellsworth. Certainly the class members should be given advance knowledge of the intention of the class representatives to be paid for any service which they perform. No such notice was given in the case at bar; members of the class did announce their objections when they were notified after-the-fact.[5] We hold that the trial court did not err in rejecting the claims of McWhorter, Davis, and Ellsworth for payment for services rendered.

Finally, claimants challenge the refusal of the trial court to order reimbursement to Ellsworth for $1,200 which he allegedly paid an expert witness who testified at the hearing concerning injunctive relief.

Ellsworth failed to include this $1,200 expense when he filed his claim against the $78,000 deposit. Consequently, the class members were not given notice of this amount.

At the first hearing concerning the claims, Ellsworth initially spoke specifically of only $200 in expense for the witness. Later, he testified that he had paid the witness $1,200. Class members requested some additional evidence of payment, such as a receipt or a cancelled check.

---

5. Claimants argue that once the settlement agreement was approved by the class members, the class members could not object to the manner in which the $78,000 was distributed. The trial court specifically asked why the intended distribution of the $78,000 had not been explained in the settlement agreement. The trial court showed proper concern for the members of the class when it insisted upon hearing any objections from the members of the class before it determined which claims should be paid.

Although Ellsworth insisted that he had such evidence, he did not produce the evidence at either of the hearings. Because Ellsworth left the matter as an issue based strictly upon witness credibility, this court cannot interfere with the conclusion reached by the trial court.

We emphasize the uniqueness of the facts in the case at bar. Having carefully considered the arguments presented and the evidence provided, we must hold that the trial court's conclusion with regard to the claims is not against the logic and effect of all facts and circumstances before it.

Judgment affirmed.

Lybrook, J. and Robertson, J. concur.

NOTE—Reported at 394 N.E.2d 1092.


## ON PETITION FOR REHEARING

LOWDERMILK, P.J.—Earle G. Davis, Mike Ellsworth, Louis McWhorter, and Arthur H. Northrup (claimants) have included in their petition for rehearing certain allegations to which we now respond.

Claimants assert that this court failed to consider questions concerning the trial court's exclusion of evidence.

First, allegations of error omitted from the motion to correct errors are not available for argument on appeal. Ind. Rules of Procedure, Trial Rule 59(G); *Haskett v. Haskett*, (1975) 164 Ind. App. 105, 327 N.E.2d 612. We find no references in claimants' motion to correct errors to any issue concerning the exclusion of evidence.

Second, the log book and the record of legal services were available at the time of the first hearing but claimants did not offer them into evidence. The trial court explained when claimants asked to reopen the hearing:

"You see the thing is as you know you don't try a lawsuit, and come in and put things in and maybe not everything in . . . and when you get the results say hey I believe I would like to try that over, maybe I can win it the next time. That's not the way you do, that isn't the way courts operate. . . ."

The trial court did not err. *Austin v. Durbin*, (1974) 160 Ind. App. 180, 310 N.E.2d 893.

Third, claimants insist that they have been "deprived of fair play by rules which change after the game is over." The trial court warned claimants that "I don't rule on [the admissibility of] anything unless it is offered." The trial court asked, "[D]o you have any new evidence that you didn't put in the other time on attorney fees?" Claimants responded, "[T]here is evidence that *can be presented* of the hours spent on this case. . . ." (Our emphasis) When claimants discussed the records concerning attorney fees, claimants commented that, "If the court wants the evidence of the whole three years of legal services," but the trial court responded:

> "The court doesn't want anything. I want you to just prove your case the way you want to prove it, I can't seem to get that across."

The trial court was simply playing by well established rules. These rules did not change during or after the course of the proceedings, and the trial court made diligent effort to explain the rules to claimants.

Next, claimants quote a portion of this court's opinion filed September 18, 1979. The quoted portion answers argument number one of Issue One. Claimants are incorrect when they assert that the quoted portion was addressed to their arguments three, six, seven, and eight of Issue One.

Claimants imply that the trial court had an absolute duty to order payment for attorney fees incurred after date of October 10, 1977. They disregard the various factors which the trial court can properly consider in determining the award of attorney fees. These factors are set forth in our opinion filed September 18, 1979.

Finally, claimants overlook the fact that insufficiency of the evidence was not the sole basis for our holding that the trial court did not err when it refused to order payment to Davis, Ellsworth, and McWhorter for services allegedly rendered.

Claimants' petition for rehearing is denied.

Robertson, J. and Neal, J., concur.

NOTE — Reported at 396 N.E.2d 140.